CSD 2024 [04/28/96]

Name, Address, Telephone No. & I.D. No.
Leonard J. Ackerman, # 171073
6977 Navajo Road, #124
San Diego, CA 92119
(619) 463-0555
ljabkatty@gmail.com

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

In Re

GFRC HOLDINGS LLC

BANKRUPTCY NO 20-02480-LA7

Debtor.

## REPORT OF SALE

Pursuant to Local Bankruptcy Rule 6004, the undersigned Trustee hereby reports and represents that:

1. On _September 08, 2020, due notice of the Trustee's intent to sell the property described herein was mailed to the debtor, the debtor's attorney and all creditors as required by Local Bankruptcy Rules 2002 and 6004.

2. The time for filing a request for hearing has expired without an objection or request for hearing having been received by the undersigned.

3. A description of the property sold, name of the purchaser(s), and the terms of sale are set forth in Exhibit "A" printed on Page 2.

4. If applicable, the following entities held a valid security interest in all or part of the property sold and were paid the stated sums in satisfaction thereof:

| Name and Address | Property | Amount Paid |
|---|---|---|
| Cerberus Business Finance, LLC. | All assets sold | $0.00 |

5. The purchase price has been paid in full and all property delivered to the purchaser.

I hereby declare under penalty of perjury that the within and attached statements are true to the best of my knowledge and belief.

DATED: November 5, 2021                                  /s/Leonard J. Ackerman, Trusteee
                                                        Trustee in Bankruptcy

CSD 2024                                                 [Continued on Page 2]

CSD 2024 (Page 2) [04/28/96]

EXHIBIT "A"

GFRC HOLDINGS LLC DEBTOR, CASE NO <u>20-02480-LA7</u>

**Type of Sale:**[1]

[xx ]    Private Sale.  Describe methods used to obtain best possible price:[2]

SEE EXHIBIT 1

| Description of Property Sold | Name and Address of Purchaser(s) | Sales Price per Item or Lot |
|---|---|---|
| | | |

Offers or bids received but not accepted from the following entities:
Name                                                                                                            Value of Offer

[  ]    Public Auction.  Auction conducted by _____

**Report of Auctioneer attached containing:**[3]

    List of the names of bidders and assigned bidding numbers, if any; and

-    Description of items sold, purchase price, and name or bidder number for purchaser for each item or lot sold; plus

-    A cover page containing a summation of the gross sales, and a statement of the commission and expenses applied for or retained by the auctioneer.

A statement that there was at the time of employment, and continued to be during the period of employment, a disinterested person as required under 11 U.S.C. §327, or, if so, the nature thereof.

Reviewed and Approved:

DATED:11/05/2021                                                            Signed: <u>/s/ Leonard J. Ackerman</u>, Trustee

INSTRUCTIONS

[1] Indicate method of Sale, whether by sealed bids, negotiations or otherwise.
[2] Describe advertising, telephone or other forms of solicitation for offers, negotiations and any other methods used to consummate sale.
[3] Auctioneer's report is to be signed under penalty of perjury, to contain all of the information here set forth, and to be reviewed and approved by trustee.
CSD 2024

# EXHIBIT "1"

**EXHIBIT "1"**

# SECOND
# ASSET PURCHASE AGREEMENT

This SECOND ASSET PURCHASE AGREMENT (the "**Agreement**") is made and entered into as of September _3_, 2020, by and between SAHARA CAPITAL PARTNERS, LLC, a Delaware limited liability companies ("**Buyer**"), LESLIE T. GLADSTONE (the "**Garden Trustee**") and LEONARD J. ACKERMAN (the "**GFRC Trustee**" and collectively with the Garden Trustee, "**Sellers**"), solely in their roles as the chapter 7 trustees of the estates of GARDEN FRESH RESTAURANTS, LLC ("**Garden**") and GFRC HOLDINGS, LLC ("**GFRC**") respectively, which are both Delaware limited liability companies ("**Debtors**"). Each of Sellers and Buyer is a "**Party**" and collectively they are the "**Parties**" to this Agreement.

## RECITALS

A.  On or about May 14, 2020 (the "**Petition Date**"), Debtors filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of California (the "**Bankruptcy Court**"), in current Case Nos. 20-02477-LA7 and 20-02480-LA 7 (the "**Bankruptcy Cases**"). Sellers were appointed as chapter 7 trustees for the respective cases.

B.  The assets of the GFRC bankruptcy estate include a 100% membership interest in Garden (the "**Membership Interest**"). The assets in the Garden bankruptcy estate include the trade mark of "Garden Fresh" (Registration No. 2862656) (the "**Garden Fresh Trademark**"), as well as certain books and records related to payroll of Garden (the "**Books and Records**").

C.  Substantially all the assets of the Debtors, including the Purchased Assets (as defined below) are subject to the senior secured, validly perfected and enforceable liens of Cerberus Business Finance LLC, in its capacities as collateral agent and administrative agent (the "**Agent**") for the Lenders under, and as defined in, that certain Financing Agreement, dated as of February 1, 2017, to which Garden and GFRC Promotions LLC, as co-borrowers, and GFRC, as guarantor, are party.

D.  Buyer and Sellers previously entered into the Asset Purchase Agreement (the "**First Agreement**") in July 2020, and Buyer submitted a partial deposit in the amount of Twenty Five Thousand and 00/100ths Dollars ($25,000.00) (the "**First Deposit**"), but Buyer failed to timely provide the balance of the deposit.

E.  Based on Buyer's default, the Garden Trustee retained the $25,000.00 deposit per the terms of the First Agreement.

F.  Sellers now desire to sell and assign, and Buyer now desires to purchase and assume, Debtors' rights, interest, and title to certain assets as set forth in this Agreement.

WHEREFORE, in consideration of the mutual covenants herein contained, the Parties hereby agree as follows:

1

# ARTICLE I.
## PURCHASE AND SALE OF ASSETS

Section 1.01  Purchase and Sale of Assets. Sellers agrees to sell, transfer, assign and deliver to Buyer, and Buyer agrees to purchase and accept from Sellers on the Closing Date (as hereinafter defined), all of Sellers' and all of Debtors' right, title and interest in and to the following assets of Debtors (collectively, the "**Purchased Assets**"):

   (a)   The Membership Interest;

   (b)   The Garden Fresh Trademark, together with the rights to use of the name "Garden Fresh Restaurants"; and

   (c)   The Books and Records, if any, except that the Garden Trustee shall be entitled to retain a copy of anything needed for her administration of the case.

Section 1.02  Excluded Assets. The assets of Debtors to be sold and assigned under this Agreement shall include only those items specifically set forth above, and by way of clarification but not limitation, shall not include the following assets of Garden, which shall remain assets of the estate of Garden (the "**Excluded Assets**"):

   (a)   any cash on hand or in banks;

   (b)   any accounts receivable, including unclaimed funds and funds from intellectual property licensing agreements;

   (c)   any personal property wherever located except as specifically identified in Section 1.01 above;

   (d)   any utility, vendor, tax or insurance refunds or deposits;

   (e)   any insurance recoveries;

   (f)   any litigation recoveries;

   (g)   any assets held by third parties;

   (h)   any goodwill or intellectual property, including but not limited to copyrights, trademarks, trademark or copyright applications, trade secrets, domain names, software, inventions, recipes, customer lists, social media accounts, marketing materials, test systems and equipment contracts or other legal obligations to license any proprietary interest and any other intellectual property whatsoever, related to Souplantation, Sweet Tomatoes or Joan's Broccoli Madness; and

2

(i)     any other intellectual property, including but not limited to copyrights, trademarks, trademark or copyright applications, trade secrets, domain names, software, inventions, recipes, customer lists, social media accounts, marketing materials, test systems and equipment contracts or other legal obligations to license any proprietary interest and any other intellectual property whatsoever, except as specifically listed in 1.01(b) above.

Section 1.03   No Discharge of Debts. Buyer understands that nothing in this Agreement contemplates, provides for, or operates as a release or discharge, including a discharge under the Bankruptcy Code, of any debt or claim against GFRC and/or Garden.

Section 1.04   Sale Free and Clear of Liens. The Purchased Assets being sold hereunder shall be sold and assigned by Sellers to Buyer free and clear of all liens, encumbrances and similar interests in accordance with 11 U.S.C. Section 363(f), with any such liens, encumbrances and interests to attach to the sales proceeds paid to Sellers in the order of their validity, priority, enforceability, and amount. For the avoidance of doubt, the Agent is not releasing any of its liens on any assets of the Debtors other than the Purchased Assets.

## ARTICLE II.

## CONSIDERATION

Section 2.01   Purchase Price. Buyer shall purchase the Purchased Assets defined in Section 1.01 above and, in full consideration therefor, shall pay to Sellers the sum of seven hundred fifty thousand and 00/100ths Dollars ($750,000.00) (the "**Purchase Price**"), which amount has been fully funded. This amount shall be credited to the respective bankruptcy estates of GFRC and Garden in accordance with the agreement between Sellers.

## ARTICLE III.

## WAIVER OF CONTINGENCIES, CLOSING, AND TERMINATION

Section 3.01   Waiver of Contingencies. Buyer's due diligence must be completed before signing this Agreement to purchase the Purchased Assets. All Buyer contingencies are hereby waived.

Section 3.02   Closing Date. This sale shall close on or before two (2) business days following the date on which a Sale Order is entered in the Bankruptcy Case approving this Agreement and authorizing Sellers to consummate this sale, without a stay of such order being entered. Notwithstanding the foregoing, in the event there is an appeal of the order approving the sale filed and there was no finding by the Bankruptcy Court that the Purchased Assets are being purchased in good faith, then notwithstanding that no stay of such order may have been entered, Sellers shall not be obligated to close the sale until such time as the appeal has been resolved. The date on which this sale closes shall be the "**Closing**" or the "**Closing Date**." The Closing shall occur at the offices of Financial Law Group, 401 Via Del Norte, La Jolla, California, or such other place as may be mutually agreed upon by the Parties.

Section 3.03    Closing Deliveries by Sellers. At the Closing, Sellers shall deliver to Buyer a bill of sale for all Purchased Assets being sold hereunder, if desired by Buyer. Sellers shall also deliver to Buyer at the Closing copies or originals of all documentation in their possession relating to the Purchased Assets and an assignment of the Garden Fresh Trademark.

Section 3.04    Closing Deliveries by Buyer. None.

Section 3.05    Bankruptcy Court Approval. Buyer acknowledges and understands that the Purchased Assets are property of the bankruptcy estates and, therefore, Sellers have authority to execute the Agreement and sell the Purchased Assets only pursuant to Bankruptcy Court approval. Sellers shall forthwith seek Bankruptcy Court approval of this Agreement pursuant to applicable Bankruptcy Court rules. Sellers shall request that the order approving the Sale provide that the Purchased Assets are sold free and clear of any liens, encumbrances, and similar interests and that the Buyer is a "good faith" buyer within the meaning of Section 363(m) of the Bankruptcy Code. Buyer agrees that it will promptly take such actions as are reasonably requested by Sellers to assist in obtaining Bankruptcy Court approval of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for purposes, among others of demonstrating that Buyer is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the Parties understand and agree that, until such time as the Bankruptcy Court, on request or application by the Garden Trustee, closes the Bankruptcy Case of Garden, Garden will remain a debtor in such Bankruptcy Case and the estate of Garden will continue to be subject in all respects to administration by the Garden Trustee.

Section 3.06    Termination of Agreement. This Agreement may be terminated only by mutual consent of Buyer and Sellers.

Section 3.07    Nonrefundable Funds Upon Termination. The parties agree that Twenty Five Thousand and 00/100ths Dollars ($25,000.00) (the "**Nonrefundable Deposit**") shall be retained by Sellers in the event that either the Agreement is terminated upon mutual consent and/or in the event the Bankruptcy Court does not approve the Agreement. Retention of the Nonrefundable Deposit is in addition to retention of the First Deposit from the First Agreement.

Section 3.08    Other Procedure Upon Termination. In the event of termination pursuant to Section 3.06 above, written notice thereof shall forthwith be given to the other Party pursuant to Section 5.03 below, and this Agreement shall terminate without further action by Buyer or Sellers. If this Agreement is terminated as provided herein, each Party shall redeliver all documents, work papers and other material of any other Party relating to the transactions contemplated hereby, whether so obtained before or after the execution hereof, to the Party furnishing the same. In addition, within ten (10) days after the termination of the Agreement, the balance of the purchase price shall be refunded to Buyer.

Section 3.09    Effect of Termination. In the event that this Agreement is validly terminated as provided herein, then each of the Parties shall be relieved of its duties and obligations arising under this Agreement after the date of such termination and such termination shall be without liability to Buyer or Sellers; provided, however, that the obligations of the

4

Parties set forth in Section 3.07, 3.08 and ARTICLE V hereof shall survive any such termination and shall be enforceable hereunder.

Section 3.10  No Termination Other than Upon Mutual Consent. The parties agree that no termination shall be effective except as provided in Sections 3.06 - 3.09 and that Sellers shall be entitled to retain the entire purchase price provided there is Bankruptcy Court approval of the Agreement.

## ARTICLE IV.
## REPRESENTATIONS

Section 4.01  As Is, Where Is.

(a)  IT IS UNDERSTOOD AND AGREED THAT, UNLESS EXPRESSLY STATED HEREIN, SELLERS ARE NOT MAKING AND HAVE NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE PURCHASED ASSETS, INCLUDING BUT NOT LIMITED TO ANY WARRANTIES OR REPRESENTATIONS AS TO MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

(b)  BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING SELLERS SHALL SELL AND CONVEY TO BUYER AND BUYER SHALL ACCEPT THE PURCHASED ASSETS "**AS IS, WHERE IS, WITH ALL FAULTS.**" BUYER HAS NOT RELIED AND WILL NOT RELY ON, AND SELLERS ARE NOT LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTEES, STATEMENTS, REPRESENTATION OR INFORMATION PERTAINING TO THE PURCHASED ASSETS OR RELATING THERETO MADE OR FURNISHED BY SELLERS OR THEIR REPRESENTATIVES, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING, EXCEPT AS EXPRESSLY STATED HEREIN. BUYER ALSO ACKNOWLEDGES THAT THE PURCHASE PRICE REFLECTS AND TAKES INTO ACCOUNT THAT THE PURCHASED ASSETS ARE BEING SOLD "AS IS, WHERE IS, WITH ALL FAULTS."

(c)  BUYER ACKNOWLEDGES TO SELLERS THAT BUYER HAD AN OPPORTUNITY PRIOR TO EXECUTING THIS AGREEMENT TO CONDUCT SUCH INSPECTIONS AND INVESTIGATIONS OF THE PURCHASED ASSETS AS BUYER DEEMS NECESSARY OR DESIRABLE TO SATISFY ITSELF AS TO THE PURCHASED ASSETS AND ITS ACQUISITION THEREOF. BUYER HEREBY ASSUMES THE RISK THAT ADVERSE MATTERS INCLUDING, BUT NOT LIMITED TO, LATENT OR PATENT DEFECTS, ADVERSE PHYSICAL OR OTHER ADVERSE MATTERS, MAY NOT HAVE BEEN REVEALED BY BUYER'S REVIEW AND INSPECTIONS AND INVESTIGATIONS. IN PARTICULAR, BUYER HEREBY ASSUMES THE RISK THAT THE PURCHASED ASSETS CAN NOT ULTIMATELY BE USED FOR THE PURPOSES INTENDED, THAT ANY APPLICABLE DEADLINES HAVE PASSED AND/OR THAT ANY EXTENSIONS BASED ON THE CARES ACT OR OTHERWISE MAY BE DISALLOWED.

Section 4.02  Buyer's Representation.  Buyer hereby represents that Buyer has the power, authority, and ability to carry out the obligations assumed and promised hereunder. Without limiting the foregoing, Buyer specifically represents that Buyer has sufficient liquid funds to consummate the purchase of the Purchased Assets and to perform Buyer's obligations under this Agreement.

## ARTICLE V.
## FURTHER AGREEMENTS

Section 5.01  Applicable Law.  This Agreement shall be governed by and construed in accordance with the laws of the United States, including the United States Bankruptcy Code and Federal Rules of Bankruptcy Procedure, and the laws of the State of California, as applicable.

Section 5.02  Consent to Jurisdiction.  The Parties hereto agree that all actions or proceedings arising in connection with this Agreement shall be tried and litigated exclusively in the United States Bankruptcy Court, Southern District of California, and the Federal Courts located in the County of San Diego, State of California.  The aforementioned choice of venue is intended by the Parties to be mandatory and not permissive in nature, thereby precluding the possibility of litigation between the Parties with respect to or arising out of this Agreement in any jurisdiction other than that specified in this Section.  Each Party hereby waives any right it may have to assert the doctrine of *forum non conveniens* or similar doctrine or to object to venue with respect to any proceeding brought in accordance with this Section, and stipulates that the United States Bankruptcy Court, Southern District of California, and the Federal Courts located in the County of San Diego, State of California shall have *in personam* jurisdiction and venue over each of them for the purpose of litigating any dispute, controversy, or proceeding arising out of or related to this Agreement.

Section 5.03  Notices.  All notices, consents, waivers, and communications hereunder given by any Party to the other shall be in writing (including facsimile transmission and electronic mail) and delivered personally, by facsimile, by electronic mail, by a recognized overnight courier, or by dispatching the same by certified or registered mail, return receipt requested, with postage prepaid, in each case addressed:

If to Buyer to:  Joshua Kim, Managing Member
3750 Las Vegas Blvd.,
Las Vegas, NV 89158

Sahara Capital Partners, LLC
6200 Centennial Center Blvd.,
Las Vegas, NV 89149

6

|   |   |
|---|---|
| If to Seller to: | Leslie T. Gladstone, Chapter 7 Trustee for Garden Fresh Restaurants, LLC<br>401 Via Del Norte<br>La Jolla, CA 92037<br>E-mail: leslieg@flgsd.com |
| If to Seller to: | Leonard J. Ackerman, Chapter 7 Trustee for GFRC Holdings, LLC<br>6977 Navajo Rd., Ste. 124<br>San Diego, CA 92119<br>E-mail: ljabkatty@gmail.com |

or such other address or addresses as Buyer or Sellers may from time to time designate by notice as provided herein, except that notices of changes of address shall be effective only upon receipt.

Section 5.04 <u>Severability</u>. If any term or other provision of this Agreement is invalid, illegal, or incapable of being enforced by any law or public policy, all other terms or provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any matter materially adverse to any Party.

Section 5.05 <u>Binding Effect; Assignment</u>. This Agreement shall be binding solely upon and inure to the benefit of the Parties and their respective successors and permitted assigns. Nothing in this Agreement shall create or be deemed to create any third-party beneficiary rights in any Person not a Party to this Agreement. No assignment of this Agreement or of any rights or obligations hereunder may be made by any Party (by operation of law or otherwise) without the prior written consent of the other Party, which consent cannot be unreasonably withheld, any attempted assignment without the required consents shall be void; <u>provided</u>, <u>however</u>, that (a) prior to the Closing, Buyer may assign this Agreement and any or all rights or obligations hereunder (including Buyer's right to purchase the Purchased Assets) to any Affiliate of Buyer and (b) after or in connection with the Closing, Buyer (or its permitted assignee) shall have the right to assign its rights and/or delegate its obligations hereunder (i) to any Affiliates, (ii) to any financing sources for collateral purposes or (iii) to any subsequent purchaser of all or any portion of the stock or assets of Buyer. Upon any such permitted assignment, the references in this Agreement to Buyer shall also apply to any such assignee unless the context otherwise requires. Notwithstanding the permitted assignment, the Buyer shall remain obligated to fund the Purchase Price if its Affiliate does not.

Section 5.06 <u>Miscellaneous</u>. This Agreement constitutes the entire agreement between the Parties and supersedes all prior understandings, agreements, or undertakings of the Parties with respect to the subject matter herein. This Agreement may be amended only by a written instrument executed by all the Parties. This Agreement shall be binding upon, and inure to, the benefit of the Parties hereto and their respective heirs, successors, and assigns. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which shall constitute together but one and the same instrument. Counterparts may be delivered via facsimile, electronic mail (including pdf), or other transmission method and any

counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

IN WITNESS WHEREOF, the Parties have caused this Asset Purchase Agreement to be duly executed, effective as of the date first written above.

**BUYER**

*Joshua Kim*
SAHARA CAPITAL PARTNERS, LLC
By: Joshua Kim

**SELLERS**

Leslie T. Gladstone, Trustee
Estate of Garden Fresh Restaurants, LLC,
Case No. 20-02477-LA7


Leonard J. Ackerman, Trustee
Estate of GFRC Holdings, LLC
Case No. 20-02480-LA7

8

counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

IN WITNESS WHEREOF, the Parties have caused this Asset Purchase Agreement to be duly executed, effective as of the date first written above.

**BUYER**                                    **SELLERS**

SAHARA CAPITAL PARTNERS, LLC                 Leslie T. Gladstone, Trustee
By: Joshua Kim                               Estate of Garden Fresh Restaurants, LLC,
                                             Case No. 20-02477-LA7

                                             Leonard J. Ackerman, Trustee
                                             Estate of GFRC Holdings, LLC
                                             Case No. 20-02480-LA7

FIRST ADDENDUM TO SECOND ASSET PURCHASE AGREEMENT

This FIRST ADDENDUM TO SECOND ASSET PURCHASE AGREEMENT (this "**Addendum**"), effective as of September 21, 2020 (the "**Effective Date**"), is by and between SAHARA CAPITAL PARTNERS, LLC, a Delaware limited liability company ("**Buyer**"), LESLIE T. GLADSTONE (the "**Garden Trustee**"), and LEONARD J. ACKERMAN (the "**GFRC Trustee**" and collectively with the Garden Trustee, "**Sellers**"), solely in their roles as the chapter 7 trustees of the estates of GARDEN FRESH RESTAURANTS, LLC ("**Garden**") and GFRC HOLDINGS, LLC ("**GFRC**") respectively, which are both Delaware limited liability companies ("**Debtors**"). Each of the Sellers and Buyer is a "**Party**" and collectively they are the "**Parties**" to this Addendum.

WHEREAS, the Buyer and Sellers are parties to that certain Second Asset Purchase Agreement dated as of September 21, 2020, with respect to certain assets of GFRC and Garden (the "**Second Asset Purchase Agreement**"). All capitalized terms used herein and not defined shall have the meaning set forth in the Second Asset Purchase Agreement; and

WHEREAS, the Parties hereto desire to enter into this Addendum in order to clarify the scope of Buyer's acquired trademark assets under the Second Asset Purchase Agreement.

NOW, THEREFORE, in consideration of the promises and mutual agreement contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. Purchased Trademark Assets. The Parties acknowledge and agree that pursuant to the Second Asset Purchase Agreement, Buyer has acquired all right, title and interest in and to the trademarks and domain names identified in the attached Exhibit A, together with all of the goodwill of Garden's business symbolized by or associated with the trademarks and domain names identified in Exhibit A.

2. Excluded Trademark Assets. The Parties acknowledge and agree that pursuant to the Second Asset Purchase Agreement, Buyer has not acquired any right, title and interest in and to the trademarks and domain names identified in the attached Exhibit B, or any of the goodwill of Garden's business symbolized or associated with the trademarks and domain names identified in Exhibit B. Buyer acknowledges that Garden Trustee intends to sell the trademarks and domain names listed in Exhibit B to a third party or third parties, and hence, Buyer acquires no right, title or interest in those trademarks and domain names, including without limitation, any right to use the trademarks and domain names identified in Exhibit B.

3. Continuing Effectiveness; Conflicts and Inconsistencies. This Addendum expressly modifies and supplements the Second Asset Purchase Agreement, and is incorporated into and made a part of the Second Asset Purchase Agreement. Except as modified hereby, the Second Asset Purchase Agreement remains in full force and effect. In the event of any conflict between the terms of the Second Asset Purchase Agreement and this Addendum, the terms of this Addendum shall control.

4. Counterparts; Electronic Delivery. This Addendum may be executed in counterparts, including counterparts by email, facsimile, portable document format (pdf) or any electronic signature complying with the U.S. federal ESIGN Act of 2000 (including DocuSign), each of which shall be deemed an original and all of which shall together constitute one and the same instrument.

5. Authorization. The individuals signing on behalf of Sellers and Buyer each hereby represent and warrant that he/she has the capacity set forth on the signature page hereof and has full power and authority to bind Sellers and Buyer to the terms hereof.

**[SIGNATURE PAGE FOLLOWS]**

1

SMRH:4825-7983-9435.1

IN WITNESS WHEREOF, the Parties have executed and delivered this Addendum on the date first above written.

**BUYER**

*Joshua Kim*

SAHARA CAPITAL PARTNERS, LLC
By: Joshua Kim

**SELLERS**

Leslie T. Gladstone, Trustee
Estate of Garden Fresh Restaurants, LLC,
Case No. 20-02477-LA7


Leonard J. Ackerman, Trustee
Estate of GFRC Holdings, LLC
Case No. 20-02480-LA7

2

IN WITNESS WHEREOF, the Parties have executed and delivered this Addendum on the date first above written.

**BUYER**                                              **SELLERS**

_____        _____
SAHARA CAPITAL PARTNERS, LLC           Leslie T. Gladstone, Trustee
By: Joshua Kim                                          Estate of Garden Fresh Restaurants, LLC,
                                                                    Case No. 20-02477-LA7

_____
Leonard J. Ackerman, Trustee
Estate of GFRC Holdings, LLC
Case No. 20-02480-LA7

2

**CALCULATION OF NET PROCEEDS FROM SALE TO SAHARA CAPITAL PARTNERS, LLC**
**25% OF NET PROCEEDS FROM TRUSTEE LESLIE GLADSTONE**

|  |  |
|---|---|
|  |  |
| GROSS PROCEEDS (25%) | $ 193,750.00 |
| ADMIN EXPENSES (25%) | $ (39,687.50) |
| NET PROCEEDS FROM SALE | $ 154,062.50 |